El Pueblo de Puerto Rico, demandante y apelado, *v.* Fortunato García, acusado y apelante.

*Número:* CR-64-501      *Resuelto:* 25 de junio de 1965

*William Morales Torres,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Elpidio Arcaya, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Dávila y Ramírez Bages.

El Juez Asociado Señor Dávila emitió la opinión del Tribunal.

Para perseguir a los infractores de la Ley de la Bolita dentro de una central azucarera un agente encubierto se empleó como ayudante de mecánico. El apelante era su compañero de trabajo. El agente relata los hechos que dieron margen a la denuncia en la siguiente forma:

" . . . Como a las ocho y media de la mañana, más o menos, me encontraba yo trabajando con el señor Forto, que es como le dicen a él, entonces, le pregunté que si le quedaban algunos números para la Bolita, lo cual él me contestó que no le quedaba ninguno, *entonces, yo seguí insistiendo; entonces, insistí yo;* yo tenía varios pedazos de billetes de la Lotería de Puerto Rico. *Entonces, yo traté que él intercambiara suerte conmigo;* entonces, me vendió un pedacito del 413, por el precio de una peseta, o sea, para cien dólares; pero, yo en vez de pagarle con dinero a él, le pagué con un pedacito de la Lotería de Puerto Rico, el 33,177; y ese mismo día se tiraba la lotería. (Énfasis suplido.)

La situación era pues, que a cambio de una fracción de un billete de la Lotería de Puerto Rico el apelante le cedió al agente su interés en el número 413 que había jugado a la bolita. El apelante no hizo entrega de papel o boleto alguno.

Terminada la presentación de la prueba fiscal el acusado alegó que de la misma surgía que fue inducido a cometer el delito. El juez inquirió entonces del abogado defensor si aceptaba que el acusado vendió un billete a los efectos de la defensa planteada. El abogado manifestó que lo aceptaba.

¿Procede la defensa invocada por el apelante?

La defensa de *"entrapment"* originada y elaborada por los tribunales norteamericanos es una de esencial justicia. Mikell, *The Doctrine of Entrapment in the Federal Courts,* 90 U. Pa. L. Rev. 245 (1942). Se considera contrario a los principios fundamentales de justicia que caracteriza el debido procedimiento de ley el que una persona sea inducida e instigada a cometer un delito por un agente del orden público y luego se le haga responsable de cometerlo. Como se expresó en *Sherman* v. *United States,* 356 U.S. 369 (1958): "La función de la policía es la prevención del crimen y la aprehensión de criminales. Ciertamente esta función no incluye la fabricación de delitos".

En *Pueblo* v. *Verdejo Meléndez,* 88 D.P.R. 207 (1963); *Pueblo* v. *Seda,* 82 D.P.R. 719 (1961); *Pueblo* v. *Pérez,* 72 D.P.R. 865 (1951), entre otros, hemos considerado y discu-

tido la defensa de *"entrapment"*. En *Verdejo Meléndez* citamos de *State* v. *Pacheco*, 369 P.2d 494 (Utah 1962) que:

" . . . Si el delito fue, de hecho, instigado o inducido por las actuaciones del funcionario, hasta el punto que la conducta de este último fue la causa principal que produjo el delito, y sin la cual éste no hubiera sido cometido, el acusado no debe ser condenado. Por el contrario, si el estado mental del acusado era tal que deseaba e intentaba cometer el delito, el mero hecho de que un funcionario u otra persona le ofreciera una oportunidad para cometerlo no constituiría entrampamiento; y esto no sería menos cierto aunque un agente encubierto acompañara al acusado en su plan delictivo y le ayudara o estimulara en él."

Esta exposición concuerda con la enunciada por el Tribunal Supremo de los Estados Unidos en *Sorrells* v. *United States*, 287 U.S. 435 (1932); *Sherman* v. *United States*, supra. En *López* v. *United States*, 373 U.S. 427 (1963) se expresó que: "La conducta con la cual la defensa de entrampamiento está relacionada es la fabricación de delitos por oficiales de la policía y sus agentes. Tal conducta, claro está, es muy diferente a las estratagemas permisibles envueltas en el descubrimiento y prevención del crimen. De manera que antes de que el problema de entrampamiento pueda justamente decirse que se ha presentado en un proceso criminal debe haber habido por lo menos alguna demostración del tipo de conducta por parte de agentes del gobierno que muy bien han podido inducir al acusado a cometer el delito imputado."

Véanse además: *United States* v. *Winfield*, 341 F.2d 70 (2d Cir. 1965); *United States* v. *Gosser*, 339 F.2d 102 (6th Cir. 1964); *United States* v. *Comi*, 336 F.2d 856 (4th Cir. 1964); *Smith* v. *United States*, 331 F.2d 784 (D.C. Cir. 1964); *United States* v. *People of the State of Illinois*, 329 F.2d 354 (7th Cir. 1964); *State* v. *Dennis*, 204 A.2d 868 (N.J. 1965); Mikell, *The Doctrine of Entrapment in the Federal Courts*, supra; *The Defense of Entrapment*, 73 Harv. L. Rev. 1333 (1960); Cowen, *The Entrapment Doctrine in the Federal Courts, and Some State Court Comparisons*, 49 J.

Crim. L. C. & P.S. 447 (1959) ; Nota, 33 N.Y.U.L. Rev. 1033 (1958) ; Nota, 26 Tenn. L. Rev. 554 (1959) ; Nota, 16 Wash. & Lee L. Rev. 72 (1959) ; Nota, 40 Texas L. Rev. 711 (1962) ; Nota, 15 Ala. L. Rev. 603 (1963). Ver también escolio 8 en *Pueblo* v. *Seda*, supra.

En el caso que consideramos la prueba estableció que el acusado trabajaba en una factoría azucarera. Establece asimismo que jugaba a la bolita pero no hay prueba de que fuera un agente vendedor. El testimonio del agente fue al efecto de que él insistió con el acusado a que intercambiaran suerte. Afirma que insistió con el acusado para que le cediera un número de la bolita a cambio de una fracción de billete de la Lotería de Puerto Rico. El agente entregó la fracción, pero el acusado no hizo entrega de papel alguno. No hay prueba de que el acusado tuviera en su poder un boleto, lista u otro documento de los usados en el juego de la bolita. Y no se le acusa por esa modalidad del delito. Se le acusó de haberle vendido un número. [1]

Nada hay en la prueba que establezca que el acusado, sin que mediara la insistencia del agente, hubiera actuado en la forma que actuó. No se demostró que existiera predisposición a cometer el acto que dio margen a la acusación. Contrario a la situación presente en *Verdejo Meléndez*, aquí el agente encubierto plantó la simiente. A pesar de que el

---

[1] En los casos que generalmente se siguieron contra los vendedores de números para el juego de la bolita, el bolitero apunta en su papel el número jugado. Usualmente el agente encubierto ve cuando se apunta el número y a veces recibe una constancia de la jugada. Cuando declara en juicio, bien presenta la constancia recibida, o expresa que vio al agente anotar el número en su lista. Pero en el presente caso el oficial del orden no declara que el acusado tuviera el número apuntado. Sólo afirma que el acusado le dijo que había jugado el 413 y en virtud del intercambio convenido, el agente encubierto obtenía el "derecho" a recibir el premio de la bolita si el número resultaba agraciado. *Quaere* si el delito de vender números para el juego de la bolita puede establecerse con esa sola evidencia. Es conveniente apuntar que el acusado no podía negar que hubiera realizado una venta de bolita para poder valerse de la defensa de *"entrapment"*. *Pueblo* v. *Pérez*, 72 D.P.R. 865 (1951).

agente trabajaba con él, nada hay en su testimonio que establezca que el acusado se dedicaba a vender números de bolita a sus compañeros de trabajo. El agente insistió, así lo declaró el propio agente, en que intercambiaran suerte y es de esa transacción de donde surgen los elementos para acusarlo de vender un número de bolita. Fue instigado a cometer el acto que dio margen a la acusación. En *Verdejo Meléndez* citando de *State* v. *Pacheco*, supra, expresamos:

"El que un funcionario del orden público cause que una persona cometa un delito, que de lo contrario no hubiera cometido, con el propósito de aprehenderlo y procesarlo, constituye entrampamiento. Esto es tan contrario a la verdadera tarea de estos funcionarios, la prevención, no la creación, del delito, y tan repugnante a los conceptos fundamentales de justicia que la condena de un acusado bajo tales circunstancias no será sostenida. Cuando surge tal controversia, la cuestión a dilucidarse es si el delito es el producto de la intención y el deseo criminal del acusado o si es el producto de la incitación o el estímulo ofrecido por el funcionario."

Aquí ciertamente la actuación del acusado se debió a la incitación y al estímulo del agente encubierto. Es un caso claro de *"entrapment"*. ([2])

*Se revocará la sentencia apelada.*

---

([2]) Nota del Compilador: En la sentencia en este caso se expresa:
"El señor Juez Presidente entiende que la prueba presentada no estableció el delito imputado y es por tanto de opinión que es innecesario considerar la defensa de 'entrapment'."