THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROY VILLANUEVA, Defendant-Appellant.

Third District   No. 76-9

Opinion filed March 31, 1977.

Santo J. Volpe, of Chicago, for appellant.

Edward Keefe, State's Attorney, of Rock Island (Robert M. Hansen and James E. Hinterlong, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Roy Villanueva was found guilty of unlawful delivery of a controlled substance in violation of section 401 of Illinois Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1100 *et seq.*) following a jury trial. Defendant was sentenced to a term of imprisonment of not less than three nor more than nine years.

On appeal in this court defendant contends (1) that the State did not prove beyond a reasonable doubt that defendant was not entrapped; (2) that the trial court erred in refusing to instruct the jury as to the scrutiny which must be applied to accomplice testimony; (3) that the classification of cocaine in the Illinois Controlled Substances Act as a narcotic is an unreasonable and unconstitutional classification, and (4) that defendant's sentence of three to nine years is excessive.

On February 6, 1975, defendant was indicted for the offense of unlawful delivery of a controlled substance (specifically 27 grams) being under 30 grams of cocaine, in violation of section 401 of the Illinois Controlled Substances Act. Prior to the actual trial, defendant made two motions to dismiss the indictment on the ground that the Illinois Controlled Substances Act arbitrarily and unconstitutionally placed cocaine in the same class as opium and other narcotic drugs, without a reasonable basis in medical and scientific fact. The trial court denied these motions. Subsequently, defendant brought the issue of the validity of the cocaine classification to this court in an interlocutory appeal (People v. Villanueva, No. 75-236), and that appeal was dismissed on the motion of the State.

It appears from the record that on July 22, 1974 (without contradiction), that defendant delivered 27 grams of cocaine to Yvonne Del Principe, a special agent for the Illinois Bureau of Investigation assigned to the Narcotics Division. Tom Garnica, a confidential source for

the Illinois Bureau of Investigation (IBI), had made arrangements for Del Principe to purchase the drugs from defendant. Garnica was a paid informant, who had previously been arrested by the IBI for the offense of calculated criminal conspiracy, and was subsequently convicted of a lesser charge and placed on probation, in exchange for his agreement to work for the IBI.

Defendant and Garnica first met in early 1974. Sometime after May 12, 1974, the defendant and Garnica commenced a series of telephone calls and meetings. Defendant stated that he received eight telephone calls from Garnica. Garnica testified that he called defendant four times. Defendant and Garnica both, however, testified as to two occasions when defendant called Garnica. Near the end of the month of June 1974, defendant, having received messages that Garnica had tried to call him, spoke with Garnica over the telephone, and when Garnica stated that he had something to talk about which could not be said over the phone, defendant agreed to meet Garnica at a hotel in Rock Island. At that meeting, Garnica asked defendant if he was interested in investing some money in cocaine and defendant told Garnica that he was not interested in such a venture. Garnica told defendant that he would not be required to make up his mind at that time but that Garnica would call the defendant later. Three days later, Garnica telephoned the defendant, who stated that he was not interested in the transaction, and Garnica told defendant to keep thinking it over.

Later, defendant received a message that Garnica had tried to call him. Defendant telephoned Garnica, and the two arranged a meeting at a restaurant in Rock Island. At that meeting, the two conversed about cocaine, and Garnica assured defendant that there were only minimal risks involved. Defendant told Garnica that he would think about it and call Garnica back. Sometime later, defendant received another message that Garnica had telephoned, and returned the call. The topic of conversation again was cocaine and Garnica asked defendant how much of the drug he could get. Defendant testified to some three additional telephone calls from Garnica during the period from July 17, 1974, through July 22, 1974, in which defendant and Garnica discussed prices and Garnica encouraged defendant to supply the cocaine.

Sometime before July 22, 1974, defendant, apparently by getting in touch with some former fellow musicians whom defendant had known in prior years in Chicago, obtained an amount of cocaine. On July 22, 1974, Garnica telephoned defendant from the IBI office and asked if defendant had the cocaine, and arranged for a meeting to complete the transaction. Later that day Garnica and Del Principe left the IBI office and proceeded to a parking lot. Defendant thereafter drove into the parking lot and Del Principe and Garnica entered defendant's automobile. Garnica

introduced Del Principe to the defendant and conversation about cocaine ensued. Defendant asked Del Principe if she would like to see the merchandise and handed her a plastic bag containing a light powder. After receiving the cocaine, Del Principe tendered $1,400 to defendant. Del Principe and Garnica indicated that after Garnica counted the cash, all $1,400 was given to defendant. Defendant testified, however, that Garnica retained some of the cash and handed the defendant only $1,200.

During the course of the trial and at the conference on jury instructions, defendant tendered IPI Instruction No. 3.17 regarding the integrity of accomplice witness testimony. The trial court upheld the State's objection to the instruction. The jury returned a verdict finding defendant guilty of unlawful delivery of a controlled substance.

At the sentencing hearing, it was established that the defendant is now approximately 35 years of age and has been in this country since he was 14. Since 1964, defendant has worked continuously at John Deere in the Rock Island area. Defendant is also part owner, with members of his family, of a restaurant in Moline, and defendant worked at the restaurant. Defendant was married to his present wife in 1960, and the couple have two children. Defendant and his wife are purchasing a modest home in Rock Island. Defendant has no prior criminal record. The only weakness listed in the presentence report was defendant's failure to use sound judgment when associating with peers. As we have noted the trial court sentenced the defendant to a term of not less than three nor more than nine years imprisonment. Defendant has been permitted to remain free on bond pending this appeal.

■■ The first issue raised by defendant on this appeal is that the State did not prove beyond a reasonable doubt that defendant was not entrapped. We note, preliminarily, that defendant did not mention the entrapment issue in his post-trial motion. As this court held in *People v. Guynn* (3d Dist. 1975), 33 Ill. App. 3d 736, 737, 338 N.E.2d 239:

> "It is clear that error must be preserved either by objection at the proper time, or by filing of a post-trial motion (*People v. Long* (1968), 39 Ill. 2d 40, 43, 233 N.E.2d 389) and that if a post-trial motion is filed, any errors not set forth in the motion are deemed to be waived (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856)."

(Accord, *People v. Carel* (3d Dist. 1976), 37 Ill. App. 3d 952, 346 N.E.2d 186.) While this court is not required to consider the merits of defendant's contention on appeal, we have determined to consider defendant's argument.

■■ In *People v. Dollen* (1972), 53 Ill. 2d 280, 283-84, 290 N.E.2d 879, the Illinois Supreme Court stated:

> "Entrapment is a valid affirmative defense if established by the

evidence. (*People v. Lewis*, 26 Ill. 2d 542, 545; *People v. Outten*, 13 Ill. 2d 21, 24.) '[W]here it appears that officers of the law or their agents have conceived and planned a criminal offense and have incited, induced, instigated or lured the accused into committing an offense which he would not otherwise have committed and had no intention of committing, entrapment is established and no conviction may be had. [Citations.] On the other hand, entrapment is not available as a defense to one who has the intent to commit the crime and does so merely because an officer of the law, for the purpose of securing evidence, affords such person the opportunity to commit a criminal act, or purposely aids and encourages him in its perpetration.' *People v. Hall*, 25 Ill. 2d 297, 300, *cert. denied*, 374 U.S. 849, 10 L. Ed. 2d 1069, 83 S. Ct. 1912; see also Ill. Rev. Stat. 1969, ch. 38, par. 7—12.

'[T]he State must be responsible for the action of their informer * * * when the defense of entrapment is raised.' (*People v. Strong*, 21 Ill. 2d 320, 326.) In *Strong*, we held that a conviction for the unlawful sale of narcotics cannot stand when the informer supplies the drugs. (See also *United States v. Bueno* (5th Cir. 1971), 447 F.2d 903.) If defendant presents some evidence to raise the issue of entrapment, 'the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all other elements of the offense.' Ill. Rev. Stat. 1969, ch. 38, par. 3—2(b)."

We note that in the instant case, where defendant was tried by a jury, defendant was found guilty in spite of his assertion of the entrapment defense. As has been noted in the appellate court in *People v. Gulley* (5th Dist. 1976), 36 Ill. App. 3d 577, 582, 344 N.E.2d 567:

"* * * whether entrapment exists is ordinarily a question for determination by the jury, under proper instruction, which determination should not be disturbed on appeal unless the reviewing court concludes that entrapment existed as a matter of law."

The evidence in the cause before us in trial established that on the date the cocaine was delivered to Del Principe, defendant exhibited no reluctance to transact the illegal sale. Defendant contends, however, that the inducements by Garnica prior to sale were sufficient to constitute entrapment. It is clear that Garnica did, with some persistence, contact defendant and encourage him to supply the drugs. In a similar situation, however, the Illinois Appellate Court held in *People v. Cooper* (2d Dist. 1974), 17 Ill. App. 3d 934, 938, 308 N.E.2d 815:

"Here, evidence relating to inducement consisted of the informer's initial requests to purchase marijuana from the

defendant on the day they were both discharged from their employment, and the informer's six telephone calls (during which he was told to call back) requesting defendant to procure the drug and sell it to him because he needed it for a party. As to predisposition, evidence revealed not that defendant was reluctant, but that he had no immediate source. The source obtained, defendant not only delivered, but indicated a desire to establish a partnership for the distribution of the drug. This evidence does not establish that defendant was entrapped as a matter of law. Such conclusion is not altered by the fact that the State failed to show that defendant had ever in the past delivered marijuana for, while it may tend to negate predisposition, it is not, alone, determinative of the issue. *People v. Wells*, 25 Ill. 2d 146, 149 (1962); *People v. Washington*, 81 Ill. App. 2d 162, 171 (1967)."

In the instant case, Garnica, the paid informer, made from four to eight telephone calls to defendant, encouraging defendant to supply cocaine. During the initial conversations, defendant expressed reluctance to supply the drugs. Nevertheless, defendant was not willing to break contact with Garnica. The uncontradicted evidence established that defendant, apparently knowing Garnica's requests, called Garnica on two occasions. He also met with Garnica twice when Garnica indicated a desire to discuss matters which could not be mentioned over the telephone. When viewed in the light of defendant's eventual procurement of the requested drugs, we must conclude that the trial court and jury could properly conclude that defendant's initial expressions of reluctance were not convincing. As the court stated in *People v. McSmith* (1961), 23 Ill. 2d 87, 95, 178 N.E.2d 641:

"Considering the stealth, secrecy and caution with which the traffic in narcotic drugs is carried on, we think that defendant's quick and ready access to a source of supply, as well as his promptness in contacting the supplier, are incompatible with his claim that he was a law-abiding person who was lured into the commission of crime. The circumstances in the record reflect, rather, a familiarity with and a place in the area of criminality involved, and an intent on defendant's part to commit the crime when opportunity afforded, once he had assured himself it was profitable and safe. Under such circumstances, the defense of entrapment will not lie."

■■ On the basis of the record, therefore, in the present case, we do not believe that we could conclude, in light of the determination in the trial court, that there was entrapment in the instant case.

■■■ Another issue raised by defendant is the contention that the trial court erred in refusing to give an accomplice testimony instruction to the

jury. Defendant, however, has not abstracted all instructions, including those given and refused in the trial court. As stated in *People v. Bell* (1972), 53 Ill. 2d 122, 130, 290 N.E.2d 214:

"* * * the defendant failed to abstract all of the instructions and thus may not allege error in the giving or refusing of instructions."

(Accord, *People v. Mostert* (3d Dist. 1976), 34 Ill. App. 3d 767, 340 N.E.2d 300.) Defendant's contention is, presumably, based upon Garnica being accountable for defendant's offense. We do not believe that Garnica was clearly so accountable. The Illinois Supreme Court stated, in *People v. Robinson* (1974), 59 Ill. 2d 184, 190-91, 319 N.E.2d 772:

"The test for whether or not one is an accomplice was definitively set forth in *People v. Hrdlicka* (1931), 344 Ill. 211, 221-222. There the court said:

'An accomplice is defined as one who knowingly, voluntarily and with common intent with the principal offender unites in the commission of a crime. * * *'

Also, in *People v. Nowak* (1970), 45 Ill. 2d 158, the court stated at pages 168 and 169:

'An accomplice is one who could himself have been indicted for the offense either as principal or accessory and if a witness is not an accomplice under this test it is not error to refuse to give a tendered instruction relative to the testimony of an accomplice.' "

It is clear from the record that Garnica did not have common intent with defendant to commit the offense, but rather had the intent merely to gather evidence against defendant. Section 5—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 5—2) provides:

"A person is legally accountable for the conduct of another when: * * * (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. However, a person is not so accountable, unless the statute defining the offense provides otherwise, if: * * * (3) Before the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the proper law enforcement authorities, or otherwise makes proper effort to prevent the commission of the offense."

Thus, while Garnica may have acted to solicit, aid and abet defendant in the commission of the offense, Garnica's association with the IBI clearly

prevented the successful commission of the offense without detection, and relieved Garnica of accountability for the offense. The trial court, therefore, did not err in refusing the accomplice testimony instruction.

■■ Defendant also contends that the classification of cocaine as a narcotic by the Illinois Controlled Substances Act is unreasonable in light of current medical and pharmacological knowledge, and thus deprives defendant of due process and equal protection of the law. In the determination of this issue, we find it desirable to refer to *People v. McCabe* (1971), 49 Ill. 2d 338, 340-41, 275 N.E.2d 407, where the Illinois Supreme Court, in considering the validity of the statutory classification of marijuana, stated:

> "In determining whether a statutory classification violates the equal-protection clause, we must begin with the presumption that the classification is valid and must impose the burden of showing invalidity on the party challenging the classification. [Citations.] The equal-protection clause does not deny the States the power to classify in the exercise of their police power and it recognizes the existence of a broad latitude and discretion in classifying. [Citation.] If any state of facts may reasonably be conceived which would justify the classification, it must be upheld. [citation.] The right of judicial questioning of a classification under the equal-protection clause is thus limited."

The supreme court in the *McCabe* case pointed out in quoting from *Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 593, that whether an enactment is wise or unwise or whether it is based on sound economic theory or whether it is the best means to achieve the desired results, and whether the legislative discretion within its prescribed limits, in seeking to attain objectives consistent with public welfare, should be exercised in a particular manner are matters for the judgment of the legislature. An honest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance. The court in the *McCabe* case proceeded with an assessment of the relevant, scientific, medical and social data, and found that classification of marijuana as a narcotic was not a reasonable classification. In the *McCabe* decision, however, the Illinois Supreme Court had occasion to discuss cocaine and in so doing stated at 49 Ill. 2d 338, 343-44:

> "Cocaine, which is placed with marijuana and the opiates in the Narcotic Drug Act, is a powerful stimulant, whereas the morphine-type drugs have a depressing action. Too, cocaine is further unlike the opiates in that it does not have effects of tolerance or physical dependence and abstention does not cause acute withdrawal symptoms. However, because of its potent nature, it induces intense physical and mental excitation and a marked reduction in

normal inhibitions which often results in aggressive and even violent behavior. Intense hallucinations and paranoid delusions are common and, because of this, cocaine users frequently attempt to dilute the experience with a depressant such as heroin or morphine."

The court then pointed out that marijuana, in its properties and consequences, differ from those attending the use of opiates or cocaine. The supreme court, therefore, implied, despite the fact that cocaine is not specifically a "narcotic" in a medical or pharmacological sense, its classification with the opiates is appropriate. The supreme court also states (at 49 Ill. 2d 351) that:

"The remainder of the Narcotic Drug Act is not affected by this holding, as we judge it is severable [citation] from that portion of the statute which concerns marijuana."

The mere fact that a doctor has indicated that cocaine has properties which differ from the opiates does not establish invalidity of the classification. *Cf. United States v. Harper* (9th Cir. 1976), 530 F.2d 828.

In light of the determination and statements in the *McCabe* case as to the relevant scientific, medical and social data, we find no basis in the record for the conclusion that the classification of cocaine in the Illinois Controlled Substances Act is unreasonable and unconstitutional or violates the equal protection clauses of the Federal and Illinois constitutions.

■■ A final issue raised by defendant relates to the sentence of three to nine years imprisonment which defendant contends is excessive. While we might have sentenced defendant to a lesser term, had we been sitting as trial judges, we do not believe we should disturb the sentence on appeal, absent an abuse of discretion (*People v. Thomas* (3d Dist. 1976), 38 Ill. App. 3d 685, 688, 348 N.E.2d 285). We certainly do not have authority to reduce the sentence of imprisonment to a sentence of probation (*People v. Bolyard* (1975), 61 Ill. 2d 583, 338 N.E.2d 168, 170). The sentence as imposed is within the appropriate limits as fixed by statute. We find no abuse of discretion in the fixing of such sentence.

For the reasons stated, the judgment of the Circuit Court of Rock Island County and the sentence imposed pursuant to such judgment of conviction are affirmed.

Affirmed.

STOUDER and SCOTT, JJ., concur.